1  KIRK D. MILLER
   Kirk D. Miller, PS
2  421 W. Riverside Avenue, Ste. 660
   Spokane, WA 99201
3  (509) 413-1494 Telephone
   (509) 413-1724 Facsimile
4

5  BRIAN G. CAMERON
   Cameron Sutherland, PLLC
6  421 W. Riverside Avenue, Ste. 660
   Spokane, WA 99201
7  (509) 315-4507 Telephone
   (509) 315 4585 Facsimile
8

9
                  **IN THE UNITED STATES DISTRICT COURT**
10                  **EASTERN DISTRICT OF WASHINGTON**

11 ROBERTA FRANK, an individual, and ) Case No.: 2:19-CV-0250-SAB
   all others similarly situated,      )
12                                      )  COMPLAINT – CLASS ACTION
                                        )
             Plaintiff,                 )
13                                      )  JURY DEMANDED
                                        )
       vs.                              )
14                                      )
                                        )
   CANNABIS & GLASS, LLC, a            )
15 Washington limited liability company; )
   NXNW Retail, LLC, a Washington       )
16 limited liability company; SPRINGBIG,)
   INC., a Delaware Corporation; and    )
17 TATE KAPPLE and his marital         )
   community,                           )
18                                      )
                                        )
             Defendants.                )
19 _____ )

20

21 FIRST AMENDED COMPLAINT - 1

# I.  INTRODUCTION

1.1    This case involves Defendants' mass-marketing, sale, and distribution of recreational "marihuana" [marijuana] (i.e., "cannabis"), a federally controlled substance under 21 USC § 812(c)(a), Schedule I (c)(10), and related drug paraphernalia through the widespread transmission of unsolicited commercial electronic text messages to cellular phones without first obtaining those recipients' clear, affirmative, and express written consent to receive such messages in violation of the federal Telephone Consumer Protection Act (TCPA), 47 USC § 227, *et seq.*, and Washington's Consumer Protection Act (CPA), RCW 19.86, *et seq.*, vis à vis the Defendants' violations of Washington's Commercial Electronic Mail Act (CEMA), RCW 19.190, *et seq.*

1.2    Plaintiff brings this class action complaint, by and through her undersigned counsel, against defendants CANNABIS & GLASS, LLC (hereinafter "Cannabis & Glass"); NXNW RETAIL, LLC, d.b.a. Cannabis & Glass (hereinafter "NXNW"); SPRINGBIG, INC. (hereinafter "Springbig"); and TATE KAPPLE and his marital community, on behalf of herself and a Class of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

1.3    In bringing this action, Plaintiff alleges that Defendant Tate Kapple, the sole member and owner of Defendant Cannabis & Glass and Defendant

FIRST AMENDED COMPLAINT - 2

1   NXNW, is personally liable for the actions of each of his solely-held limited

2   liability companies.

3       1.4    The named individual and his marital community are liable for the

4   actions complained of herein, because these actions were in furtherance of and for

5   the benefit of the individual's marital community.  The revenues and benefits

6   derived through the individual's activities described herein enriched himself and

7   his marital community through the acquisition of real and personal property,

8   financial accounts, debt relief, and other material and financial benefits.

9                   **II.    JURISICTION AND VENUE**

10      2.1    The Court has jurisdiction over this class action under 28 U.S.C. §

11  2201.  If applicable, the Court also has pendent jurisdiction over the state law

12  claims in this action pursuant to 28 U.S.C. § 1367(a).

13      2.2    Venue is proper in this judicial district pursuant to 28 U.S.C. §

14  1291(b)(2).

15                  **III.    NATURE OF THE ACTION**

16      3.1    Plaintiff brings this class action for damages for Defendants' actions

17  related to the transmission of unsolicited commercial electronic text messages, also

18  known as "junk texting" or "text blasting," to Washington cellular phone users in

19  violation of federal and state law.

20

21  FIRST AMENDED COMPLAINT - 3

1    3.2    Defendants' actions violated the federal TCPA, 47 USC § 227, *et seq.*,

2    and Washington's CPA, RCW 19.86, *et seq.*, vis à vis the Defendants' violations

3    of the state's CEMA, RCW 19.190, *et seq.*,

4    3.3    Plaintiff seeks statutory damages, exemplary damages, declaratory

5    and injunctive relief, costs and attorneys' fees, and other equitable relied against

6    Defendants for their illegal junk texting to Washington cellular phone users.

7    ## IV.    PARTIES

8    4.1    Plaintiff and putative class members are cellular phone users residing

9    in the state of Washington. Plaintiff and putative class members are all "persons"

10    as that term is defined in 42 USC § 153(39); RCW 19.190.010(11); and RCW

11    19.86.010(1).

12    4.2    Defendant Cannabis & Glass is a Washington limited liability

13    company engaged in the mass-marketing, sale, and distribution of recreational

14    cannabis, a federally controlled substance under 21 USC § 812(c)(a), Schedule I

15    (c)(10), and related drug paraphernalia, with its principal place of business located

16    at 9403 East Trent Avenue in Spokane Valley, Washington.

17    4.3    Defendant Cannabis & Glass is a "person" as that term is defined in

18    42 USC § 153(39); RCW 19.190.010(11); and RCW 19.86.010(1).

19    4.4    Upon information and belief, Defendant Cannabis & Glass is a

20    company that regularly initiates or assists in the transmission of unsolicited

FIRST AMENDED COMPLAINT - 4

21

1  commercial text messages to cellular phone users throughout Washington,

2  including those who did not provide clear, affirmative, and express written consent

3  in advance to receive such text messages, to promote the sale and distribution of

4  recreational cannabis and related drug paraphernalia.

5      4.5    Defendant NXNW Retail, LLC, is a Washington limited liability

6  company doing business as "Cannabis & Glass," which is engaged in the mass-

7  marketing, sale, and distribution of recreational cannabis, a federally controlled

8  substance under 21 USC § 812(c)(a), Schedule I (c)(10), and related drug

9  paraphernalia, with its principal place of business located at 9415 East Trent

10  Avenue in Spokane Valley, Washington.

11     4.6    Defendant NXNW is a "person" as that term is defined in 42 USC §

12  153(39); RCW 19.190.010(11); and RCW 19.86.010(1).

13     4.7    Upon information and belief, Defendant NXNW is a company that

14  regularly initiates or assists in the transmission of unsolicited commercial text

15  messages to cellular phone users throughout Washington, including those who did

16  not provide clear, affirmative, and express written consent in advance to receive

17  such text messages, to promote the sale and distribution of recreational cannabis

18  and related drug paraphernalia.

19     4.8    Defendant Springbig, Inc., is a Delaware corporation specializing in

20  "text-blast" marketing for various commercial clients, including Defendant

FIRST AMENDED COMPLAINT - 5

21

1 Cannabis & Glass and Defendant NXNW, with its principal place of business

2 located at 621 Northwest 53rd Street, Suite 260, in Boca Raton, Florida.

3       4.9    Defendant Springbig is a "person" as that term is defined in 42 USC §

4 153(39); RCW 19.190.010(11); and RCW 19.86.010(1).

5       4.10   Upon information and belief, Defendant Springbig is a company that

6 regularly initiates or assists in the transmission of unsolicited commercial text

7 messages to cellular phone users throughout Washington, including those who did

8 not provide clear, affirmative, and express written consent in advance to receive

9 such text messages.

10      4.11   Defendant Tate Kapple is an individual and resident of Spokane

11 County, doing business in Spokane County, as the sole governor and owner of

12 Defendant Cannabis & Glass and Defendant NXNW, which are principally

13 engaged in the mass-marketing, sale, and distribution of recreational cannabis, a

14 federally controlled substance under 21 USC § 812(c)(a), Schedule I (c)(10), and

15 related drug paraphernalia. Defendant Kapple is a "person" as that term is defined

16 in 42 USC § 153(39); RCW 19.190.010(11); and RCW 19.86.010(1).

17      4.12   Mr. Kapple uses the corporate forms of Defendant Cannabis & Glass

18 and Defendant NXNW, individually and collectively, to violate or evade a duty in

19 such a manner that these corporate forms must be disregarded to prevent loss to an

20 innocent party.

FIRST AMENDED COMPLAINT - 6

21

4.13   Upon information and belief, Defendant Kapple is an individual who personally directed the transmission of unsolicited commercial text messages to cellular phone users throughout Washington, including those who did not provide clear, affirmative, and express written consent in advance to receive such text messages, to promote the sale and distribution of recreational cannabis and related drug paraphernalia.

4.13.1.1    In the alternative, Defendant Kapple is an individual who personally approved the transmission of unsolicited commercial text messages to cellular phone users throughout Washington, including those who did not provide clear, affirmative, and express written consent in advance to receive such text messages, to promote the sale and distribution of recreational cannabis and related drug paraphernalia.

4.13.1.2    In the alternative, Defendant Kapple is an individual who personally commissioned the transmission of unsolicited commercial text messages to cellular phone users throughout Washington, including those who did not provide clear, affirmative, and express written consent in advance to receive such text messages, to promote the sale and distribution of recreational cannabis and related drug paraphernalia.

FIRST AMENDED COMPLAINT - 7

1         4.13.1.3     In the alternative, Defendant Kapple is an individual who

2   personally initiated the transmission of unsolicited commercial text

3   messages to cellular phone users throughout Washington, including

4   those who did not provide clear, affirmative, and express written

5   consent in advance to receive such text messages, to promote the sale

6   and distribution of recreational cannabis and related drug

7   paraphernalia.

8         4.13.1.4     In the alternative, Defendant Kapple is an individual who

9   personally assisted in the transmission of unsolicited commercial text

10   messages to Washington businesses and consumers throughout

11   Washington, including those who did not provide clear, affirmative,

12   and express written consent in advance to receive such text messages,

13   to promote the sale and distribution of recreational cannabis and

14   related drug paraphernalia.

15      4.14  Upon information and belief, Defendant Kapple directly participated

16   in the wrongful and illegal acts described herein, including but not limited to

17   utilizing an ATDS to transmit unsolicited commercial text messages to cellular

18   phone users throughout Washington, without first obtaining those recipients'

19   express written consent to receive such messages, causing them harm.

20

21   FIRST AMENDED COMPLAINT - 8

1    4.15   Upon information and belief, Defendant Kapple directly participated

2  in the wrongful and illegal acts described herein, including but not limited to

3  initiating or assisting in the transmission of unsolicited commercial text messages

4  to cellular phone users throughout Washington, without first obtaining those

5  recipients' clear and affirmative consent to receive such messages, causing them

6  harm.

7    4.16   Defendant Kapple had knowledge of, participated in, and directed or

8  approved of the wrongful conduct described herein and, under the doctrine of

9  piercing the corporate veil, he is personally liable for the penalties of such

10  wrongful conduct.

11    4.17   Defendant Kapple formed Cannabis & Glass, LLC, in December 2015

12  in an attempt to prevent liability from attaching to him for the wrongful and illegal

13  acts he intended to commit, coordinate, direct, or approve through the mass-

14  marketing, sale, and distribution of recreational cannabis, a federally controlled

15  substance under 21 USC § 812(c)(a), Schedule I (c)(10), and related drug

16  paraphernalia, including the use of commercial "junk texting" to promote his illicit

17  business.  The income and property derived from Defendant Kapple's activities

18  were used to develop and expand his wrongful and illegal business activities,

19  enrich himself and his marital community, and evade personal liability for the

20

21  FIRST AMENDED COMPLAINT - 9

1   actions and decisions he made as the sole owner and governor of the limited

2   liability company.

3       4.18   Defendant Kapple formed NXNW Retail, LLC, in November 2013 in

4   an attempt to prevent liability from attaching to him for the wrongful and illegal

5   acts he intended to commit, coordinate, direct, or approve through the mass-

6   marketing, sale, and distribution of recreational cannabis, a federally controlled

7   substance under 21 USC § 812(c)(a), Schedule I (c)(10), and related drug

8   paraphernalia, including his use of commercial "junk texting" to promote his illicit

9   business.  The income and property derived from Defendant Kapple's activities

10  were used to develop and expand his wrongful and illegal business activities,

11  enrich himself and his marital community, and evade personal liability for the

12  actions and decisions he made as the sole owner and governor of the limited

13  liability company.

14              **V.    CLASS ACTION ALLEGATIONS**

15      5.1    Plaintiff re-alleges every allegation above as if set forth herein in full.

16      5.2    Plaintiff brings this claim on her own behalf and on behalf of the

17  following class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

18      5.3    The Class of federal TCPA claimants ("TCPA Class") consists of:

19      (a)    all "persons," as that term is defined in 42 USC § 153(39);

20      (b)    residing in the state of Washington;

    FIRST AMENDED COMPLAINT - 10

21

(c)    to whom Defendants used an automatic telephone dialing system ("ATDS") to transmit one or more unsolicited commercial text messages to a cellular phone;

(d)    within the previous four (4) years;

(e)    through the date that the class is certified;

5.4    Plaintiff also brings this action on her own behalf and on behalf of the following Class of Washington CPA claimants ("CPA Class"), pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

5.5    The CPA Class consists of:

(f)    all "persons," as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1);

(g)    residing in the state of Washington;

(h)    to whom Defendants initiated or assisted in the transmission one or more unsolicited commercial text messages to a cellular phone;

(i)    within the previous four (4) years;

(j)    through the date that the class is certified;

5.6    Collectively, members of the TCPA Class and CPA Class may be referred to as "Class Members."

FIRST AMENDED COMPLAINT - 11

1    5.7    The identities of all respective class members are readily ascertainable

2    from the contact records of Defendants and those cellular phone users who have

3    been targeted by Defendants' unsolicited commercial text messages.

4    5.8    Excluded from the Class are the Defendants and all officers,

5    members, partners, managers, directors, and employees of the Defendants and their

6    respective immediate families, and legal counsel for all parties to this action and all

7    members of their immediate families.

8    5.9    This action has been brought, and may properly be maintained, as a

9    class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil

10    Procedure, because there is a well-defined community interest in the litigation:

11    (a)    **Numerosity:**  On information and belief, the Plaintiff alleges that

12    each of the Classes defined above is so numerous that joinder of all members

13    would be impractical.  Defendants are believed to serve a customer base of tens of

14    thousands of individuals in Washington whom the Defendants targeted with at

15    least a dozen unsolicited commercial text messages promoting the sale and

16    distribution of recreational cannabis and related drug paraphernalia every month.

17    Disposition of the claims of the proposed classes will provide substantial benefits

18    to both the parties and the court.

19    (b)    **Common Questions Predominate:** Common questions of law and

20    fact exist as to all members of the Class and those questions predominate over any

FIRST AMENDED COMPLAINT - 12

21

1    questions or issues involving only individual class members. The principal issue

2    with regard to Plaintiff's federal law claim is whether the Defendants' use of an

3    ATDS to transmit unsolicited commercial text messages to Washington cellular

4    phone users violated the federal TCPA, 47 USC § 227, *et seq.*  The principal issue

5    with regard to Plaintiff's state law claims is whether the Defendants initiated or

6    assisted in the transmission of unsolicited commercial text messages to

7    Washington recipients in violation of Washington's CPA, RCW 19.86, *et seq.*, vis

8    à vis the Defendants' violations of Washington's CEMA, RCW 19.190, *et seq.*

9        (c)    The following questions of law and fact are common to each proposed

10   Class member:

11            1.    Whether the Defendants made, initiated, or caused to be

12                  initiated the text messages in question, for the purposes of the

13                  TCPA;

14            2.    Whether the Defendants made use of an ATDS within the

15                  meaning of the TCPA;

16            3.    Whether the Defendants violated the TCPA by automatically

17                  transmitting unsolicited text messages to TCPA Class members.

18            4.    Whether the Defendants violated Washington state law (for

19                  members of the CPA Class only);

20

21   FIRST AMENDED COMPLAINT - 13

5.    Whether the Defendants initiated or assisted in the

transmission of unsolicited commercial text messages by

formulating, composing, sending, originating, or transmitting

such messages in violation of Washington law (for members of

the CPA Class only);

6.    Whether the Defendants conduct in violation of federal and

state law was willful, intentional, or knowing;

7.    Whether the Defendants are likely to continue their unlawful

conduct such that an injunction is necessary;

8.    Whether the respective Class Members have been injured, and

the extent to which they are entitled to actual and statutory

damages for those injuries; and

9.    Whether Plaintiff and the Classes are entitled to an award of

reasonable attorneys' fees and costs of suit.

(d)    **Typicality:** Plaintiff's claims are typical of the claims of the class

members.  Plaintiff and all members of the Plaintiff Class have claims arising out

of the Defendant's common uniform course of conduct complained of herein.

(e)    **Adequacy:** Plaintiff will fairly and adequately protect the interests of

the class members insofar as Plaintiff has no interests that are averse to the absent

class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff

FIRST AMENDED COMPLAINT - 14

1  has also retained counsel experienced in handling consumer lawsuits, complex

2  legal issues, and class actions.  Neither Plaintiff nor her counsel have any interests

3  which might cause it not to vigorously pursue the instant class action lawsuit.

4      (f)  **Superiority:**  A class action is superior to the other available means

5  for the fair and efficient adjudication of this controversy because individual joinder

6  of all members would be impracticable. Class action treatment will permit a large

7  number of similarly situated persons to prosecute their common claims in a single

8  forum efficiently and without unnecessary duplication of effort and expense that

9  individuals' actions would engender.

10      5.10  Defendants have acted or refused to act on grounds generally

11  applicable to the proposed Classes, thereby making equitable relief appropriate

12  with respect to the Classes.

13      5.11  The prerequisites for maintaining a class action for injunctive relief

14  exist:

15      5.11.1  If injunctive relief is not granted, great harm and irreparable

16  injury to Plaintiff and members of the proposed Classes will continue;

17      5.11.2  Plaintiff and members of the proposed Classes have no

18  adequate remedy at law for the injuries that are threatened to recur, in

19  that, absent action from this court, Defendants will continue to violate

20  federal and state law, causing injury to Plaintiff and Class Members.

FIRST AMENDED COMPLAINT - 15

21

1    5.12   Certification of a class under Rule 23(b)(3) of the Federal Rules of

2  Civil Procedure is also appropriate in that the questions of law and fact common to

3  members of the Class predominate over any questions affecting an individual

4  member, and a class action is superior to other available methods for the fair and

5  efficient adjudication of the controversy.

6    5.13   Plaintiff's claims apply to the Defendants' illegal acts and omissions

7  occurring in the four years preceding the filing of this case, through the date that

8  the class is certified.

9              **VI.   PLAINTIFF'S ALLEGATIONS OF FACT**

10    6.1    Plaintiff repeats, reiterates, and incorporates the allegations contained

11  in paragraphs above herein with the same force and effect as if the same were set

12  forth at length herein.

13    6.2    Washington's Legislature has declared:

14              The legislature recognizes that the number of unsolicited text

15              messages sent to cellular telephones and pagers is increasing.

16              This practice is raising serious concerns on the part of cellular

17              telephone users and pager subscribers.   These unsolicited

18              messages often result in costs to the cellular telephone and pager

19              subscribers in that they pay for use when a message is received

20              through their devices.  The limited memory of these devices can

FIRST AMENDED COMPLAINT - 16

21

1    be exhausted by unwanted text messages resulting in the inability

2    to receive necessary and expected messages. The legislature

3    intents [intends] to limit the practice of sending unsolicited

4    commercial text messages to cellular telephone or pager numbers

5    in Washington. RCW 19.190.060, Intent—2003 c 137.

6    6.3    Plaintiff is a Washington resident who regularly uses a cellular

7    telephone with the capacity to send and receive transmissions of text messages.

8    6.4    Together, defendants Cannabis & Glass, NXNW, and Springbig

9    jointly operate a "loyalty program" to promote the mass-marketing, sale, and

10    distribution of recreational cannabis, a federally controlled substance under 21

11    USC § 812(c)(a), Schedule I (c)(10), and related drug paraphernalia, by offering

12    former, current, and potential customers various discounts and incentives at

13    Defendant Cannabis & Glass' and Defendant NXNW's retail locations.

14    6.5    Defendant Cannabis & Glass, in conjunction with Defendant NXNW,

15    commissioned Defendant Springbig to deliver a mass-market advertising campaign

16    promoting the purchase and use of their recreational cannabis and related drug

17    paraphernalia through text messaging to cellular phone users throughout

18    Washington.

19    6.6    Defendant Springbig's online advertising claims: "Sending a text

20    message promotion through springbig [sic] increases customer visits by 25% on

21    FIRST AMENDED COMPLAINT - 17

1  average.  Just take one of our businesses in San Diego for example.  A day without

2  sending an [sic] SMS campaign brought in roughly 175 visits, when sending a

3  campaign the dispensary saw an average of 25% lift in traffic or 40 additional

4  visits."

5      6.7    Defendant Springbig's Manager of Business Development claims that

6  "springbig [sic] has worked alongside retailers to send over 12,270 Campaigns and

7  has seen 60,616 rewards redeemed in return!"

8      6.8    Defendant Cannabis & Glass and Defendant NXNW each gathers

9  telephone contact information from first-time and returning customers, including

10  but not limited to Plaintiff, during the course of their in-store consumer

11  transactions.

12      6.9    The equipment and software (i.e., marketing platform) Defendant

13  Springbig utilizes to transmit text messages is capable of storing thousands or more

14  telephone numbers.

15      6.10    Defendant Springbig's marketing platform is designed to send

16  advertising "campaigns" via text messages to multiple phone numbers

17  simultaneously.

18      6.11    Defendant Springbig's marketing platform allows text messages to be

19  sent to multiple phone numbers simultaneously.

20

21  FIRST AMENDED COMPLAINT - 18

6.12    For example, Defendant Springbig's suggests the following on its website regarding targeted blasting of commercial text messages to customers:

"Have a customer group that loves edibles? Send them a 20% off all edibles text message or send BOGO offers to all of your customers."

6.13    Since 2016, Defendants Cannabis & Glass and Defendant NXNW used the Springbig platform to send commercial text messages simultaneously to more than a thousand customers on multiple occasions.

6.14    On its website, Defendant Springbig suggests the following use of its platform: "Is it a slow day at the dispensary? Send out a text message campaign with a happy hour offer or one day sale and turn it into one of your busiest days! Waxy Wednesday anyone?"

6.15    On its website, Defendant Springbig promotes a feature that allows automatic initiation of commercial text messages to customers:

With Springbig text messages, you can create a cadence with your customers to text them when they reach a certain parameter (visit, spend, time away from your dispensary, etc.), automatically on their birthday, or after a visit (this is a great time to send customers a prompt to review your dispensary). And that's just a few of the simplest ways to use our platform. With our full suite of lifecycle marketing

FIRST AMENDED COMPLAINT - 19

1    features, you can create a custom cannabis marketing
2    strategy that caters to each of your customer profiles!

3    6.16  Springbig states on its website that its platform provides the following
4    feature and service: "Using a variety of adjustable parameters, dispensaries can set
5    text marketing that automatically sends to specific audiences."

6    6.17  Defendant Springbig sells various messaging plans to recreational
7    cannabis retailers, a.k.a. "dispensaries."

8    6.18  Defendant Springbig offers an online marketing platform that its
9    customers access by paying for periodic subscriptions.

10    6.19  The fees charged by Defendant Springbig to Defendant Cannabis &
11    Glass and Defendant NXNW are based, in part, on the number of text messages
12    that Defendant Cannabis & Glass and Defendant NXNW intend to send in a given
13    month through the Springbig marketing platform.

14    6.20  Defendant Springbig controls the maximum number of text messages
15    a cellular phone user receives through Defendant Springbig's marketing platform
16    in any month.

17    6.21  Defendant Springbig provides suggested messaging content and
18    templates for use by recreational cannabis retailers, including Defendant Cannabis
19    & Glass and Defendant NXNW.

20

21    FIRST AMENDED COMPLAINT - 20

1      6.22   Defendant Springbig's marketing platform allows its customers to add

2  telephone numbers into its system at the point of sale.

3      6.23   The purpose of recreational cannabis retailers adding telephone

4  numbers into the Springbig platform is to send commercial text messages to those

5  retailers' customers.

6      6.24   Defendant Cannabis & Glass and Defendant NXNW, through their

7  agents, collected customer phone numbers at the point of sale for the purpose of

8  sending advertisements via text messages to their former, current, and potential

9  customers.

10     6.25   The phone numbers collected by Defendant Cannabis & Glass and

11  Defendant NXNW were uploaded onto the Springbig platform.

12     6.26   Since 2015, Defendants automatically transmitted thousands of

13  unsolicited commercial text messages to groups of Defendant Cannabis & Glass'

14  and Defendant NXNW's customers using the Springbig platform.

15     6.27   Defendant Springbig charges a monthly fee to its customers for access

16  to its text message marketing platform.

17     6.28   Defendant Springbig's pricing for its various plans that it sells to its

18  customers is based, at least in part, on the volume of commercial text messages

19  that will be sent through Defendant Springbig's marketing platform during the

20  month.

FIRST AMENDED COMPLAINT - 21

21

6.29    Defendant Cannabis & Glass and Defendant NXNW both routinely enter telephone contact information from first-time and returning customers, including the Plaintiff, to Defendant Springbig's platform without those individuals' knowledge or consent.

6.30    Defendant Springbig designs, maintains, and operates the software and telecommunications systems and platforms that support Defendant Cannabis & Glass' and Defendant NXNW's joint "loyalty program," promoting the sale and distribution of recreational cannabis and related drug paraphernalia.

6.31    Defendant Springbig utilizes an ATDS to transmit unsolicited commercial text messages to targeted cellular phone users throughout Washington.

6.32    None of the Defendants obtained the Plaintiff's express written consent to receive commercial text messages prior to initiating the transmission, or assisting in the transmission, of commercial text messages to her cellular phone.

6.33    None of the Defendants obtained express written consent to receive commercial text messages prior to initiating the transmission, or assisting in the transmission, of commercial text messages to the recipients' cellular phones.

6.34    None of the Defendants obtained Plaintiff's clear and affirmative consent to receive commercial text messages prior to initiating the transmission, or assisting in the transmission, of commercial text messages to her cellular phone.

FIRST AMENDED COMPLAINT - 22

1    6.35    None of the Defendants obtained targeted recipients' clear and

2    affirmative consent to receive commercial text messages prior to initiating the

3    transmission, or assisting in the transmission, of commercial messages to those

4    recipients' cellular phones.

5    6.36    On or about October 19, 2018, Plaintiff visited Defendant Cannabis &

6    Glass' retail location, during which time Defendant Cannabis & Glass verbally

7    obtained her cellular phone number.

8    6.37    Defendant Cannabis & Glass informed Plaintiff that her phone

9    number and first name were required to be enrolled in Defendants' "loyalty

10    program" to receive discounts on future purchases.

11    6.38    Plaintiff was not advised by Defendant Cannabis & Glass verbally, in

12    writing, or otherwise that providing her cellular telephone number would result in

13    her receiving commercial text messages from Defendants.

14    6.39    At the time Defendant Cannabis & Glass initially gathered Plaintiff's

15    phone number, Plaintiff did not consent, verbally, in writing, or otherwise, to

16    receive commercial text messages from Defendant Cannabis & Glass, its agents, or

17    its assistants.

18    6.40    At the time Defendant Cannabis & Glass initially gathered Plaintiff's

19    phone number, Plaintiff did not consent, verbally, in writing, or otherwise, to

20

21    FIRST AMENDED COMPLAINT - 23

1  receive commercial text messages from Defendant NXNW, its agents, or its

2  assistants.

3      6.41   At the time Defendant Cannabis & Glass initially gathered Plaintiff's

4  phone number, Plaintiff did not consent, verbally, in writing, or otherwise, to

5  receive commercial text messages from Defendant Springbig, its agents, or its

6  assistants.

7      6.42   On or about October 19, 2018, Plaintiff also visited Defendant

8  NXNW's retail location, during which time Defendant NXNW advised Plaintiff

9  that it was unnecessary for her to enroll in a separate NXNW rewards program,

10  because its "loyalty program" was combined with Defendant Cannabis & Glass'

11  rewards program.

12      6.43   Plaintiff did not consent at any time during her visit to Defendant

13  NXNW's retail location on October 19, 2018, verbally, in writing, or otherwise, to

14  receive commercial text messages from Defendant NXNW, its agents, or its

15  assistants.

16      6.44   On or about October 20, 2018, the day after she visited each of

17  Defendant Cannabis & Glass' and Defendant NXNW's retail locations, Plaintiff

18  began receiving almost daily unsolicited commercial text messages from

19  Defendants promoting the sale and distribution of their recreational cannabis and

20  related drug paraphernalia, including but not limited to:

FIRST AMENDED COMPLAINT - 24

21

6.44.1    Messages transmitted on (Saturday) October 20, 2018, and

(Sunday) October 21, 2018, stating:



6.44.2    Messages transmitted on (Monday) October 22, 2018;

(Tuesday) October 23, 2018; and (Thursday) October 25, 2018,

stating:

///

///

///

FIRST AMENDED COMPLAINT - 25



6.45   Over the next month or more, Defendants continued to barrage the

Plaintiff with unsolicited commercial text messages promoting the sale and

distribution of recreational cannabis and related drug paraphernalia.

6.46   Each of the unsolicited commercial text messages transmitted by

Defendants to the Plaintiff was transmitted from numbers registered to Defendant

Springbig.

6.47   The text messages that Plaintiff received from Defendants were

formatted and transmitted from SMS short code 57140 or 50269.

FIRST AMENDED COMPLAINT - 26

6.48    SMS short codes 57140 and 50269 are both registered to Defendant Springbig.

6.49    Defendants formatted and transmitted unsolicited commercial test messages to customers of Cannabis & Glass and NXNW using SMS short code 57140, which is registered to Defendant Springbig.

6.50    Defendants formatted and transmitted unsolicited commercial test messages to customers of Cannabis & Glass and NXNW using SMS short code 50269, which is registered to Defendant Springbig.

6.51    Defendants formatted and transmitted unsolicited commercial text messages to customers of Cannabis & Glass and NXNW using SMS long codes that are registered to Defendant Springbig.

6.52    Each of the unsolicited commercial text messages transmitted by Defendants was transmitted *en masse* to thousands of Defendant Cannabis & Glass' and Defendant NWNX's customers.

6.53    Each of the unsolicited commercial text messages transmitted by Defendants was transmitted *en masse* to hundreds of Defendant Cannabis & Glass' and Defendant NWNX's customers.

6.54    Each of the unsolicited commercial text messages transmitted by Defendants was scripted and addressed to a general audience, with no personalized

FIRST AMENDED COMPLAINT - 27

1  salutation or acknowledgment of Plaintiff's or any other person's individual

2  identity.

3     6.55   Defendant Springbig, in conjunction with Defendant Cannabis &

4  Glass and Defendant NXNW, transmitted these unsolicited commercial text

5  messages utilizing equipment that had the capacity to store the cellular phone

6  numbers they gathered from thousands of former, current, and potential

7  participants in the Defendants' joint "loyalty program," including the Plaintiff,

8  then automatically dial those numbers *en masse* to thousands of cellular phone

9  users.

10    6.56   Defendant Springbig, in conjunction with Defendant Cannabis &

11  Glass and Defendant NXNW, transmitted these unsolicited commercial text

12  messages utilizing equipment and software that had the capacity to store the

13  cellular phone numbers they gathered from thousands of former, current, and

14  potential participants in the Defendants' joint "loyalty program," including the

15  Plaintiff, then automatically dial those numbers *en masse* to hundreds of cellular

16  phone users.

17    6.57   Each of the unsolicited commercial text messages transmitted by

18  Defendants was transmitted through the use of an ATDS.

19    6.58   In the four years prior to Defendant's transmission of its first

20  unsolicited commercial text message to Plaintiff, through the date of the filing of

FIRST AMENDED COMPLAINT - 28

21

1  this action, the Defendants have illegally utilized an ATDS to transmit tens of

2  thousands of unsolicited commercial text messages promoting the sale and

3  distribution of recreational cannabis, a federally controlled substance under 21

4  USC § 812(c)(a), Schedule I (c)(10), and related drug paraphernalia to thousands

5  of cellular phone users.

6      6.59   In the four years prior to Defendant's transmission of its first

7  unsolicited commercial text message to Plaintiff, through the date of the filing of

8  this action, the Defendants have illegally initiated or assisted in the transmission of

9  tens of thousands of unsolicited commercial text messages promoting the sale and

10  distribution of recreational cannabis a federally controlled substance under 21 USC

11  § 812(c)(a), Schedule I (c)(10), and related drug paraphernalia,  to thousands of

12  cellular phone users.

13      6.60   As a result of the Defendants' actions and omissions, the Plaintiff and

14  members of the putative class have suffered injuries in fact, including invasions of

15  Plaintiff's privacy, intrusion upon and occupation of the capacity of Plaintiff's and

16  other recipients' cellular phones and devices, and wasting Plaintiff's and other

17  recipients' time and attention in tending to a barrage of unwanted and unsolicited

18  commercial text messages, or "junk texts," transmitted by the Defendants in

19  violation of federal and state law.

20

21  FIRST AMENDED COMPLAINT - 29

## VII.   FIRST CAUSE OF ACTION
### Violations of the Telephone Consumer Protection Act
### 47 USC §227, *et seq.*

7.1   Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length herein.

7.2   The TCPA prohibits any business or individual from using an ATDS to transmit unsolicited commercial text messages.  47 USC § 227(b)(1)(A)(iii); 47 CFR § 64.1200(a)(2).

7.3   The actions and omissions of each Defendant in these regards violated 47 USC § 227, *et seq.*

7.4   As a result of the Defendants' violations, Plaintiff has suffered injuries-in-fact, including invasions of privacy, trespass to chattels, lost time, and distraction.  Pursuant to 47 USC § 227(b)(3), Plaintiff is entitled to an award of $500, plus an exemplary award increasing those damages to $1,500, for each of the Defendants' violations.

## VIII. SECOND CAUSE OF ACTION
### Violation of Washington's Consumer Protection Act
### RCW 19.86, *et seq.*

8.1   Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length herein.

FIRST AMENDED COMPLAINT - 30

1    8.2    Washington's CPA states in part that: "Unfair methods of competition
2    and unfair or deceptive acts or practices in the conduct of any trade or commerce
3    are hereby declared unlawful."  RCW 19.86.020.

4    8.3    The Defendants engaged in unfair acts and practices in the conduct of
5    trade or commerce in a manner that offended the public interest and caused injury
6    to the plaintiff and actually injured, has the capacity to injure, or had the capacity
7    to injure other persons.

8    8.4    The actions and omissions of each Defendant in this regard violated
9    RCW 19.86, *et seq*.

10    8.5    Washington's CEMA prohibits any "person," as that term is defined
11    in RCW 19.190.010(11), from initiating or assisting in the transmission of a
12    unsolicited commercial electronic text message to a Washington resident's cellular
13    phone or pager, RCW 19.190.060(1).

14    8.6    Each of the Defendants, individually and collectively, initiated or
15    assisted in the transmission of one or more unsolicited commercial electronic text
16    messages to the Plaintiff and putative class members.

17    8.7    The actions and omissions of each Defendant in this regard violated
18    RCW 19.160.060(1).

19    8.8    Pursuant to RCW 19.190.100, initiating or assisting in the
20    transmission of unsolicited commercial electronic text messages to cellular phone

FIRST AMENDED COMPLAINT - 31

21

1  users is an unfair or deceptive act in trade or commerce for purposes of applying

2  the CPA.

3      8.9    Pursuant to RCW 19.190.100, initiating or assisting in the

4  transmission of unsolicited commercial text messages to cellular phone users is a

5  matter affecting the public interest for purposes of applying the CPA.

6      8.10  Pursuant to RCW 19.190.100, initiating or assisting in the

7  transmission of unsolicited commercial text messages to cellular phone users is not

8  reasonable in relation to the development and preservation of business.

9      8.11  Pursuant to RCW 19.19.040(1), damages to each recipient of a

10  commercial electronic text message sent in violation of CEMA are the greater of

11  $500 or actual damages, which establishes the injury and causation elements of a

12  CPA claim as a matter of law. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 732, 406 P.3d

13  1149, 1155 (2017).

14      8.12  The Defendants' acts and omissions complained of herein actually

15  injured other persons and have the capacity to injure other persons.

16      8.13  As a result of the Defendants actions and omissions, the Plaintiff and

17  members of the putative class are each entitled to recover $500, plus exemplary

18  damages of $1,500, plus costs and reasonable attorneys' fees for each CEMA

19  violation committed by the Defendants.

20

21  FIRST AMENDED COMPLAINT - 32

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

9.1    Declaring that this action is properly maintainable as a Class action and certifying the Plaintiff as Class representative and Kirk Miller of Kirk D. Miller, PS, and Brian Cameron of Cameron Sutherland, PLLC, as Class Counsel;

9.2    Awarding Plaintiff and the Class actual and statutory damages, costs, and fees pursuant to 47 USC § 227(b)(3), RCW 19.190.040(1), and RCW 19.86.090;

9.3    Awarding treble damages pursuant to the federal TCPA and Washington's CPA;

9.4    Granting injunctive relief prohibiting Defendants from transmitting unsolicited commercial electronic text messages;

9.5    Granting declaratory relief finding that the Defendants' conduct violated the federal TCPA as well as Washington's CEMA and CPA.

9.6    Awarding the Plaintiff her costs in this action, including reasonable attorneys' fees and expenses; and

9.7    Awarding Plaintiff and the Classes such other and further relief as the Court may deem just and proper.

///

///

FIRST AMENDED COMPLAINT - 33

1

DATED this 2nd day of August, 2019.

2

3                                                            *Kirk D. Miller, P.S.*

4                                                            /s Kirk D. Miller
                                                             Kirk D. Miller, WSBA #40025
5                                                            *Attorney for Plaintiff*

6
                                                             *Cameron Sutherland, PLLC*
7
                                                             /s Brian G. Cameron
8                                                            Brian G. Cameron, WSBA #44905
                                                             Shayne J. Sutherland, WSBA
9                                                            #44593
                                                             *Attorneys for Plaintiff*
10

11

12

13

14

15

16

17

18

19

20

FIRST AMENDED COMPLAINT - 34

21