FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 01, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERTA FRANK, an individual, and all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>CANNABIS & GLASS, LLC, a Washington limited liability company; NXNW Retail, LLC, a Washington limited liability company; SPRINGBIG, INC., a Delaware Corporation; and TATE KAPPLE and his marital community,<br><br>    Defendants. | No. 2:19-cv-00250-SAB<br><br>**ORDER GRANTING DEFENDANT SPRINGBIG'S MOTION TO DISMISS; GRANTING LEAVE TO AMEND** |

  Before the Court is Defendant's Springbig's Motion to Dismiss Under Rule 12(b)(6), ECF No. 14. A hearing on the motion was held on September 26, 2019 in Spokane, Washington. Plaintiff was represented by Kirk D. Miller and Brian Cameron. Defendant Springbig was represented by Mark S. Eisen.

### Background Facts

  Plaintiff is bringing a putative class action against Defendants Cannabis & Glass, LLC, NXNW Retail, LLC, and Tate Kapple ("Retail Defendants") and Defendant Springbig, Inc., for their various respective roles in sending

**ORDER GRANTING DEFENDANT SPRINGBIG'S MOTION TO DISMISS; GRANTING LEAVE TO AMEND ~ 1**

unauthorized text messages to her cell phone. More specifically, in October of 2018, Plaintiff visited the Retail Defendants' store. At the point of sale, she gave the sales associate her cell phone number so she could be part of their loyalty program. She was not told that by giving her number she would start receiving text messages from the Retail Defendants that notified her of sales and discounts. Rather, she was told by the employee that her phone number and first name were required before she could enroll in the loyalty program. She visited a second store and was told that she did not have to enroll in a separate rewards program because the two were linked. The next day, she began to receive daily text messages from the Retail Defendants that were sent using Defendant Springbig's SMS short codes.

Plaintiff is bringing claims under the federal Telephone Consumer Protection Act (TCPA), 47 U.C.S. 227, *et seq*. and the Washington Consumer Protection Act, RCW 19.86, *et seq.*, which is based on an alleged violation of the Washington Commercial Electronic Mail Act (CEMA), RCW 19.190, *et seq.*

## Motion Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the Complaint. *Navarro v. Block*, 250 F.3d 729, 732 (2001). In order to survive a Rule 12(b)(6) Motion to Dismiss, the Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twobly*, 555 U.S. 544, 570 (2007). Thus, in deciding whether Plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.* This presumption, however, does not apply to legal conclusions. *Id.*

The U.S. Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

**ORDER GRANTING DEFENDANT SPRINGBIG'S MOTION TO DISMISS; GRANTING LEAVE TO AMEND ~ 2**

defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted lawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (quotations omitted).

Further, it instructed that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* The Complaint must do more than tender "naked assertions devoid of further enhancement." *Id.* (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### Telephone Consumer Protection Act ("TCPA")

Under the Telephone Consumer Protection Act, ("TCPA), it is unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ….to any telephone number assigned to a . . . cellular telephone service," 47 U.S.C. § 227(b)(1)(A)(iii). A text message is a "call" under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951-52 (9th Cir. 2009). Prior express consent must be in writing if the message is telemarketing but can be either oral or written if the call is informational. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1838-44 (2012).

Congress has delegated to the Federal Communications Commission (FCC), the authority to make rules and regulations to implement the TCPA. 47 U.S.C. § 227(b)(2). Because of this, courts should defer to the FCC's interpretation of a term in the TCPA, so long as the term is not defined by the TCPA and the FCC's interpretation is reasonable. *Satterfield*, 569 F.3d at 953.

According to the FCC, generally, common carriers providing

**ORDER GRANTING DEFENDANT SPRINGBIG'S MOTION TO DISMISS; GRANTING LEAVE TO AMEND ~ 3**

telecommunication services are not liable under the TCPA. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of* 1991, 7 FCC Rcd. 8752, 8776 n.83 (1992) (concluding that common carriers are not liable under the TCPA absent "a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmission"). A carrier is not entitled to this exemption if it "was so involved in placing the call as to be deemed to have initiated it." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7980 (2015). In its 2015 Ruling, the FCC clarified that "application providers that play a minimal role in sending text messages are not *per se* liable for unwanted robocalls." *Id.* at 7965. It noted the term "make" is not defined by the TCPA. *Id.* In determining whether an app or user is the maker of the call, the FCC explained that it looks to the "totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purpose of the TCPA." *Id.*

Some of the factors used to evaluate an entity's involvement in placing the call include:

–the extent to which the provider/host controls the messaging

–the extent to which the provider/host controls the timing or sending of the message;

–the extent to which the provider/host controls the recipient list;

–the extent to which the provider/host "willfully enables fraudulent spoofing of telephone numbers;"

–the extent to which the provider/host assists customers in blocking Caller ID;

–whether the provider/host knowingly allows its customers to use the platform in a way that violates the TCPA;

**ORDER GRANTING DEFENDANT SPRINGBIG'S MOTION TO DISMISS; GRANTING LEAVE TO AMEND ~ 4**

–whether the service or platform is purely reactive in nature, sending
messages as proscribed and arranged by the customer.

2015 TCPA Ruling, 30 FCC Rcd. at 7980-84.

### Analysis

Plaintiff has not argued the Court should disregard the 2015 Ruling, or that the necessary factors identified by the FCC in that ruling before an application provider can be held liable should not apply to this case. Instead, Plaintiff argues that the allegations in her complaint are sufficient to get past a 12(b)(6) Motion. Her Amended Complaint, however, does not provide any allegations that Defendant Springbig took steps physically necessary to place the call or that it was so involved in the placing of the call as to be deemed to have initiated it. Merely alleging that Defendant Springbig "made" or "initiated' the call is not sufficient to allege a TCPA claim against Defendant Springbig. There are no allegations that Defendant Springbig exercised any discernible involvement in deciding whether, when, or to whom the text message is sent, or what the text message said. It appears Plaintiff is attempting to meet this requirement by including in the Amended Complaint the content of sample text messages found on their website. These allegations and examples are not sufficient to establish liability on the part of Defendant Springbig, given that there are no allegations stating the retail Defendants used Defendant Springbig's suggested content.

Taken as true, Plaintiff's allegations in the Amended Complaint allege that Defendant Springbig had some role, albeit a minor one, in the causal chain that resulted in the sending of the text. According to the guidance provided by the FCC, however, this is not enough to survive a 12(b)(6) motion. Because Plaintiff's allegations do not allege that Springbig controlled the recipients, timing or content, the Amended Complaint does not allege that Defendant Springbig was the maker or initiator of the text message. Consequently, Plaintiff has failed to state a TCPA claim against Defendant Springbig.

**ORDER GRANTING DEFENDANT SPRINGBIG'S MOTION TO DISMISS; GRANTING LEAVE TO AMEND ~ 5**

## Washington's Commercial Electronic Mail Act (CEMA)

The Washington legislature originally enacted the Commercial Electronic Mail Act ("CEMA"), Wash. Rev. Code § 19.190.010 *et seq.*, to deal with unwanted commercial email messages. *Wright v Lyft, Inc.*, 189 Wash.2d 718, 724 (2017). In 2003, CEMA was amended to include prohibitions on initiating or assisting the transmission of electronic commercial text messages to cell phones. Wash. Rev. Code § 19.190.060; *Wright*, 189 Wash.2d at 724.

"Assisting the transmission" of a text message requires providing "substantial assistance or support which enables any person to formulate, compose, send, originate, initiate, or transmit a commercial electronic mail message," with knowledge that the initiator is violating or intends to violate consumer protections, and expressly excludes electronic mail service providers who provide intermediary transmission services. Wash. Rev. Code § 19.190.100(1). "Initiate the transmission" refers to the action by the original sender of an electronic mail message or an electronic text message but excludes an intervening interactive computer service, unless the service knows, or actively avoids knowing, that the person initiating the transmission is violating consumer protections. *Id.* § (7).

## Analysis

In order for Defendant Springbig to be liable under CEMA, Plaintiff must allege that either it initiated the transmission or assisted in the transmission. Plaintiff has not alleged that Defendant Springbig was the original sender of the test message. Moreover, Plaintiff's conclusory allegations that Defendant Springbig violated CEMA are not sufficient, given that Plaintiff has also alleged that Defendant Springbig's role in the alleged violation was providing a programmable platform from which the Retail Defendants initiate the message. Similar to the TCPA, while Plaintiff has alleged facts that suggest that Defendant provided some form of assistance, *i.e.* the software application used to send the text messages, Plaintiff has not

alleged facts to suggest that Defendant Springbig provided *substantial* assistance to the retail Defendants in the sending of the alleged text message, which is required by the statute. Additionally, Plaintiff has not alleged any facts that Defendant Springbig knew or consciously avoided knowing the Retail Defendants were violating or intending to violate the law. Because the Amended Complaint fails to allege adequate facts to show that Defendant Springbig initiated the transmission or assisted in the transmission of the text message as contemplated by the statute, Plaintiff has failed to state a CEMA/CPA claim upon which relief may be granted.[1]

**Leave to Amend**

Plaintiff is granted leave to file a Second Amended Complaint if she believes she can remedy the pleading and legal deficiencies identified above.

//
//
//
//
//
//
//
//
//
//
//
//
//

---

[1] Plaintiff relies on the alleged violation of CEMA to allege a *per se* violation of the Washington Consumer Protection Act.

**ORDER GRANTING DEFENDANT SPRINGBIG'S MOTION TO DISMISS; GRANTING LEAVE TO AMEND ~ 7**

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Springbig's Motion to Dismiss Under Rule 12(b)(6), ECF No. 14, is **GRANTED**.

2. Within 2 (two) weeks from the date of this Order, Plaintiff shall file a Second Amended Complaint if she believes she can remedy the pleading to address the legal deficiencies identified above.

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order and forward copies to counsel.

**DATED** this 1st day of October 2019.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANT SPRINGBIG'S MOTION TO DISMISS; GRANTING LEAVE TO AMEND ~ 8**